IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN BRICHER,                                             CV. 06-6022-PK
                          Plaintiff,

v.                                                        FINDINGS AND
                                                         RECOMMENDATION

JOANNE B. BARNHART,
Commissioner of Social Security,
                          Defendant.

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiff John Bricher ("Bricher") brings this action for judicial review of a final decision

of the Commissioner of the Social Security Administration ("Commissioner") denying his

application for Social Security disability insurance benefits ("DIB") under Title II of the Social

Security Act.  This court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth

below, this court recommends that the Commissioner's decision be reversed and remanded for

further administrative proceedings consistent with this opinion.

BACKGROUND

Bricher was 62 years old on the date of the hearing held before an Administrative Law Judge ("ALJ") in Eugene, Oregon, on June 8, 2005.  He completed high school.  He has a twenty-eight year history of past work as a machinist.

Bricher alleges disability due to tinnitus in the left ear, other disorders of the ear, and depression with anxiety.  AR 32, 33, 67.[1]  Bricher also alleges disability based on obsessive compulsive disorder.  AR 105.  He claims these conditions cause the following symptoms:  stress and anxiety from the tinnitus such that he feels he is being tortured, difficulty concentrating, poor short-term memory, and a desire to sleep all the time because he does not hear the tinnitus when he is sleeping.  AR 67.  He alleges that his hearing loss causes him difficulty in understanding normal conversation, especially in the presence of noise.  AR 194.

Bricher alleges that he cannot work because of his combined impairments, but that he ultimately stopped working in September 1992 because he was laid off.  AR 14.  He alleges that he decided not to return to work because the stress of work worsened his tinnitus.  AR 14.

Bricher filed an application for DIB benefits on March 18, 2003, alleging disability beginning January 1, 1993.  He was last insured on December 30, 1998.  Thus, to establish entitlement to benefits, he must demonstrate that the onset of disability occurred on or before that date.  Bricher's application was denied initially and upon reconsideration.  Following a hearing, the ALJ, in a decision dated September  19, 2005, found Bricher not disabled and therefore not entitled to benefits.  On November 29, 2005, the Appeals Council denied Bricher's

---

[1]Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

request for review, making the ALJ's decision the final decision of the Commissioner.

## STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039 (citation omitted).  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## MEDICAL RECORDS

The medical records accurately set forth Bricher's medical history as it relates to his claim.  The court has carefully reviewed the records, and the parties are familiar with them.  Accordingly, only a brief summary appears below.

Page 3 - FINDINGS AND RECOMMENDATION

Bricher's history of tinnitus in his left ear dates back to April 1990. AR 221. In May 1990, Bricher underwent unsuccessful surgery in an attempt to correct his tinnutis. AR 93. His hearing loss was first documented in September 1992, and he reported difficulty understanding normal conversation, especially in the presence of noise. AR 194. Bricher's hearing loss was due to a long history of on the job noise exposure. AR 194. In 1992, he was prescribed a hearing aid and masker to decrease the symptoms of tinnitus for which there is no cure. AR 213. Bricher wore the masker occasionally. AR 292. His tinnitus was described at various times as "severe" and "dramatic", and as worsening over the years from 1990 to 1997. AR 199, 292. Bricher was diagnosed with long-term depression in September 1997. AR 292. He was treated by a psychiatrist from 1990 to 1997. AR 293. A doctor noted that his tinnitus had become an obsession to Bricher in September 1992. AR 195. Doctors noted his compulsive-type behavior in February 1998, and referred to it formally as Obsessive Compulsive Disorder ("OCD") in May 2001, July 2003, December 2003, and May 2005. AR 291, 279, 299, 314, 303. Bricher has been placed on a number of prescription drugs including prozac, tranxene, hycodan, ativan, and celexa. AR 72, 118.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One. The ALJ determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity,

the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four.  The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five.  The ALJ determines whether claimant has the residual functional capacity to do any other work.  If not, claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the

Page 5 - FINDINGS AND RECOMMENDATION

national economy that claimant can do, claimant is not disabled.  If the ALJ does not meet this

burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  Tackett, 180 F.3d at

1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that

exist in significant numbers in the national economy.  Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that Bricher had not engaged in substantial gainful activity at

any time relevant to this decision.  AR 15.  This finding is not in dispute.  At step two, the ALJ

found that Bricher had the following severe impairment:  tinnitus.  AR 15.  This finding is not in

dispute.  At step three, the ALJ found that Bricher's impairment was not severe enough to meet

or medically equal any of the listed impairments of 20 C.F.R. Subpart P, Appendix 1.  AR 15.

This finding is not in dispute.

Next, the ALJ found that Bricher retained the residual functional capacity for work

without physical limitation.  AR 15.  This finding is in dispute.  At step four, the ALJ found that

Bricher could perform his past relevant work as a machinist.  AR 20.  This finding is in dispute.

The ALJ did not make a finding at step five.

DISCUSSION

Bricher contends that the ALJ erred by:  (1) finding that Bricher had no vocational

limitations; and (2) providing insufficient reasons for rejecting the testimony of Bricher's wife,

Sherry Bricher.

Vocational Limitations

At step two, the ALJ evaluated the medical evidence in the record and determined

Bricher's tinnitus to be a severe impairment.  The severity requirement in step two of the sequential evaluation process is satisfied when medical evidence shows that the claimant is unable to perform basic work activities, as required in most jobs.  20 C.F.R. § 404.1521; SSR 85-28.  Examples of these basic work activities include:  seeing, hearing, and speaking; and understanding, carrying out and remembering simple instructions.  Id.  After finding that Bricher's impairment did not meet a listing for him to be disabled at step three, the ALJ formulated Bricher's residual functional capacity and determined that Bricher had no physical or mental vocational limitations and could return to his past work as a machinist.  Bricher asserts that the ALJ committed error in this assessment, specifically in not requiring the vocational expert ("VE") who was present at the hearing to testify as to Bricher's vocational limitations.  This court agrees.

Medical evidence in the record supports Bricher's argument that a VE should have been consulted regarding his vocational limitations.  Records from September 1992 show that Bricher had a bilaterally asymmetrical high frequency hearing loss which was worse in the left ear than the right.  AR 194.  Dr. Robert Johnson, an otolaryngologist, opined that Bricher's long history of noise exposure in machine shops "has seriously impaired his hearing in both ears."  Id.  Bricher reported that he had difficulty understanding normal conversational speech, especially in the presence of noise.  Id.  Medical evidence also shows that Bricher's tinnitus was treated with a device that masked noises in his left ear.  AR 215.  Bricher wore custom made earplugs to treat his severe tinnitus.  AR 274.  In 2001, Dr. Michael Thompson recommended that Bricher wear

hearing protection whenever he was around excessive noise.[2]  Bricher also alleged that he had

trouble concentrating and that his short-term memory was poor.  AR 67.

　　　While the ALJ analyzed Bricher's disability claim and determined that he did not meet

the medical component of the disability determination, the ALJ failed to address whether

Bricher's tinnitus and related hearing loss and the prescribed treatments for those impairments

resulted in vocational limitations.  Although the ALJ found that prior to 1998 Bricher's tinnitus

was "under control", he was still required to address whether hearing protection devices and/or

excessive noise would have impaired Bricher's ability to function as a machinist, and whether

use of the masking device on the job would have worsened Bricher's hearing.  See AR 218

(Bricher wrote in 1993 that his hearing was worse when he used the masking device); AR 299

(medical opinion that the masking device combined with Bricher's OCD aggravated his tinnitus).

The sequential evaluation process that ALJs utilize in analyzing disability claims includes a

medical component and a vocational component.  Compare 42 U.S.C. § 423(d)(1)(A) (disability

is a medically determinable physical or mental impairment which lasted for at least 12 months),

with 42 U.S.C. § 423(d)(2)(A) (disability will only be found if impairment is of such severity

that claimant can perform no substantial gainful work in the national economy).  The effect of

wearing earplugs or a tinnitus masking device while working as a machinist should have been

addressed before the ALJ determined that Bricher could return to his past work.  Bricher also

testified that when he was last employed prior to September 1992, he did not go to work two or

three days per month because of his tinnitus which may be a vocational limitation affecting his

ability to be employed.  AR 351.  Finally, Dr. Thompson's opined that Bricher's OCD limited his

───────────────

[2]While January 2001 is later in time than Bricher's date last insured, June 30, 1998, Dr.
Thompson's recommendation could apply to Bricher's tinnutis in 1998 as well.

Page 8 - FINDINGS AND RECOMMENDATION

ability to return to his prior work environment  and function as a machinist.  AR 299.  Testimony

by the VE would have resolved these issues.  Because the ALJ's analysis of Bricher's vocational

limitations was inadequate, this court recommends remanding for further proceedings, including

testimony by a VE.

<u>Testimony of Sherry Bricher</u>

        Bricher alleges the ALJ gave insufficient reasons for rejecting the written and oral

testimony of his wife, Sherry Bricher ("Mrs. Bricher").  This court agrees.  The ALJ dismissed

Mrs. Bricher's copious entries in the administrative record and her testimony at the hearing with

a two-sentence explanation:

> Although the testimony of the claimant's wife may be credible
> in itself, its substance only reflects the picture that the claimant,
> an incredible individual, chose to make.  There is little in her
> testimony, in any event, to suggest that the claimant was more than
> minimally limited on or prior to December 31, 1998.[3]

AR 19.

        The ALJ erred when he dismissed Mrs. Bricher's testimony as a lay witness based on his

conclusion that Bricher himself lacked credibility.  <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th

Cir. 1993) (ALJ's dismissal of lay witness testimony because he found the claimant was not

credible suggests ALJ mistakenly believed that lay witnesses can never make independent

observations of the claimant's symptoms); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th

Cir. 1996) (failure to consider the testimony of friends and family members violates Social

Security regulations).  Mrs. Bricher lived with Bricher and was able to observe him on a daily

basis.  <u>See</u> <u>Dodrill</u>, 12 F.3d at 918-19 (family members in a position to observe a claimant's

_____

[3]The ALJ most likely meant to recite Bricher's date last insured which was June 30, 1998.

Page 9 - FINDINGS AND RECOMMENDATION

symptoms on a daily basis are competent to testify as to claimant's condition).  Bricher's primary

care physician, Dr. Thompson, asked Bricher to use his wife in monitoring his depression and

compulsive behavior.  AR 291.  Mrs. Bricher was also a registered nurse.  She testified that loud

noises and wearing ear protectors made Bricher's tinnitus worse.  AR 89.  She also testified that

Bricher had poor short-term memory since he developed tinnitus, and that his concentration was

worse.  AR 89.  She testified as to the results of Bricher's unsuccessful tinnutis surgery.  AR 93.

She also testified regarding Bricher's ongoing OCD symptoms and how little she and Bricher

were able to do outside their home because of Bricher's tinnitus.  AR 364-65.  Contrary to the

ALJ's second stated reason for dismissing her testimony, Mrs. Bricher's observations provided

evidence that suggested that Bricher had severe limitations prior to his date last insured.

Although the ALJ found Mrs. Bricher credible, he dismissed her testimony without providing

germane reasons for doing so.  This was error.  See Dodrill, 12 F.3d at 919.  Because the ALJ

failed to provide sufficient reasons for dismissing Sherry Bricher's testimony, this court

recommends remanding for further proceedings, including reconsideration of Sherry Bricher's

testimony.

///

///

///

///

///

///

///

CONCLUSION

For the foregoing reasons, this court recommends reversing and remanding the

Commissioner's decision for further administrative proceedings consistent with this opinion.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review.  Objections, if any, are due February 14, 2007.  If no objections are filed,

review of the Findings and Recommendation will go under advisement on that date.  If

objections are filed, a response to the objections is due fourteen days after the date the objections

are filed and the review of the Findings and Recommendation will go under advisement on that

date.

Dated this 30th day of January, 2007.


    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge